KATHRYN KENEALLY
Assistant Attorney General
JEREMY N. HENDON (ORBN 982490)
Trial Attorney, Tax Division
 U.S. Department of Justice
 P.O. Box 683
 Ben Franklin Station
 Washington, D.C. 20044
 Telephone:   (202) 353-2466
 Fax:          (202) 307-0054

MELINDA HAAG
United States Attorney
THOMAS M. NEWMAN (NYSBN 4256178)
Assistant United States Attorney
 9th Floor Federal Building
 450 Golden Gate Avenue, Box 36055
 San Francisco, CA 94102
 Telephone:   (415) 436-6888
 Fax:          (415) 436-7009

*Of Counsel*

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. C 13-03721 CRB |
| | ) | |
| Plaintiff, | ) | **NOTICE OF MOTION AND** |
| | ) | **UNITED STATES' MOTION** |
| v. | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| JOHN C. HOM, | ) | |
| | ) | Date:  April 18, 2014 |
| Defendant. | ) | Time: 10:00 a.m. |
| | ) | Judge   Honorable Charles R. Breyer |
| _____ | ) | |

U.S. SJ MOTION
C 13-03721 CRB

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.      Defendant's Education and Work History . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.     Defendant's Online Poker Gambling . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES' MOTION . . . . . . 8

    I.      Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.     General FBAR Legal Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.    Defendant is a United States citizen and/or resident . . . . . . . . . . . . . . . . . . 10

    IV.    Defendant had a financial interest in, or signatory authority over, three bank or other financial accounts during 2006 and 2007. . . . . . . . . . . . 11

    V.     Defendant's FirePay, PokerStars, and PartyPoker accounts are in a foreign country. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.      FirePay accounts are in a foreign country . . . . . . . . . . . . . . . . . . 13

        B.      PokerStars accounts are in a foreign country. . . . . . . . . . . . . . . . 14

        C.      PartyPoker accounts are in a foreign country. . . . . . . . . . . . . . . . 14

    VI.    The aggregate amount in Defendant's FirePay, PokerStars, and PartyPoker accounts  exceeded $10,000 in United States currency during 2006 and 2007. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    VII.   Defendant's other defenses do not have merit . . . . . . . . . . . . . . . . . . . . . . . 15

        A.      IRS Notice 2009-62 does not apply to Defendant's accounts . . . . . . 15

        B.      Defendant did not act with reasonable cause in failing to submit his FBARs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.      The IRS timely assessed the civil non-willful FBAR penalties . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                    **Page**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Avia Group Int'l. Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557,

   1560 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied*,

   440 U.S. 981 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*California Architectural Building Products, Inc. v. Franciscan Ceramics,*

  *Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied*, 484 U.S. 1006 (1988) . . . . . . . . . . . . . 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Commodity Futures Trading Com. v. Savage*, 611 F.2d 270 (9th Cir. 1979) . . . . . . . . . . . . . . . . 9

*First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 290 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Magnuson v. Baker*, 911 F.2d 330, 333 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Clines*, 958 F.2d 578, 581-82 (4th Cir.), *cert. denied*,

   505 U.S. 1205 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*United States v. Dela Espriella*, 781 F.2d 1432, 1436 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . 11

*Zoslaw v. MCA Distribution Corp.*, 693 F.3d 870, 883 (9th Cir. 1982), *cert.*

  *denied*, 460 U.S. 1085 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

22 U.S.C. § 2705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26 U.S.C. § 6651(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

26 U.S.C. § 7701(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

26 U.S.C. § 7701(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

31 U.S.C. § 3717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18

31 U.S.C. § 5312 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,12

31 U.S.C. § 5312(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

31 U.S.C. § 5312(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

1    31 U.S.C. § 5312(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2    31 U.S.C. § 5312(a)(2)(R) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

3    31 U.S.C. § 5314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8, 9, 10

4    31 U.S.C. § 5321(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5    31 U.S.C. § 5321(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

6    31 U.S.C. § 5321(a)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

7    31 U.S.C. § 5321(a)(5)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

8    31 U.S.C. § 5321(a)(5)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 10, 16

9    31 U.S.C. § 5321(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10    31 U.S.C. § 5321(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

11    31 U.S.C. § 5321(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12    **FEDERAL REGULATIONS**

13    26 C.F.R. § 301.6651–1(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

14    31 C.F.R. § 103.24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 11, 12

15    31 C.F.R. § 103.24(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 11

16    31 C.F.R. § 103.27(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

17    31 C.F.R. § 1010.350(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on Friday, April 18, 2014 at 10:00 a.m., in the courtroom of the Honorable Charles R. Breyer, located at Courtroom 6 of the United States Courthouse, 17th Floor, 455 Golden Gate Avenue, San Francisco, California, Plaintiff will move for summary judgment on all of its claims against John C. Hom ("Defendant") in this action.

Plaintiff, the United States of America ("United States"), through counsel, submits this motion for summary judgment seeking an order granting it summary judgment with respect to all of its claims in the Complaint and entering a judgment in favor of the United States in this action. The grounds for this motion, including legal authority, are explained below.

**INTRODUCTION**

The Interstate Wire Act of 1961 generally prohibits the interstate operation of betting businesses in the United States.  As such, online gambling is technically illegal but U.S. citizens or residents were able to access gambling sites from the internet.  United States gamblers typically use an intermediary bank account or other online financial services company to fund those activities.  One bank that was known to provide such intermediary accounts was FirePay, an online banking site operated out of London by FirePay UK Ltd.  Congress passed The Unlawful Internet Gambling Enforcement Act of 2006 ("UIEGA") prohibiting the transfer of public funds from a United States financial institution to an internet gambling site.  This law took effect on October 13, 2006, and after that date, United States citizens or residents who continued to gamble online were forced to use foreign financial institutions or other online businesses that were not covered by UIEGA and/or who chose not to follow it.  Although not a United States financial institution, FirePay voluntarily stopped acting as an intermediary in late 2006 due to UIEGA.

During at least 2006 and 2007 Defendant engaged in online poker gambling through an internet gambling website called PokerStars.com, regulated and operated out of the Isle of Man, and also during at least 2006 through another internet gambling site called PartyPoker.com, regulated and operated out of Gibraltar.  During at least 2006, Defendant held an online account at FirePay to fund his offshore online poker gambling accounts.

31 U.S.C. § 5314 gives the Secretary of the Treasury the authority to require reports of certain transactions by United States persons with foreign financial agencies. 31 C.F.R. § 103.24[1] requires each person subject to the jurisdiction of the United States having a "financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country" to report such relationship to the Commissioner of Internal Revenue Service ("Commissioner") for each year in which such relationship exists and provide this information in a reporting form prescribed by the Secretary to be filed by such persons. This is a two-step process. First, the individual must indicate an interest in a financial account in a foreign country by checking "Yes" or "No" in the appropriate box on his tax return, Form 1040, Schedule B, Part III. Second, the tax return refers the individual to Treasury Form TD F 90-22.1, Report of Financial Bank and Financial Accounts ("FBAR") which is the prescribed form by the Secretary to report a financial interest in or authority over bank accounts, securities accounts, or other financial accounts in a foreign country.

If a person subject to the jurisdiction of the United States fails to make a report to the Commissioner and submit an FBAR to the IRS when required to do so under 31 U.S.C. § 5314, civil penalties may be imposed by the Secretary of the Treasury. *See* 31 U.S.C. § 5321(a)(5)(A). For non-willful violations occurring after October 22, 2004, the amount of the civil penalty shall not exceed $10,000. *See* 31 U.S.C. § 5321(a)(5)(B)(i). No penalty shall be imposed, however, if the violation was due to reasonable cause and the amount of the transaction or the balance in the account at the time of the transaction was properly reported. *See* 31 U.S.C. § 5321(a)(5)(B)(ii). The Financial Crimes Enforcement Network ("FinCEN") delegated to the IRS the authority to assess and collect civil penalties authorized under 31 U.S.C. § 5321(a) for violations of the reporting and recordkeeping provisions of 31 U.S.C. § 5314.

Defendant did not properly report his accounts on any Form 1040 for 2006 and 2007 and

---

[1]31 C.F.R. § 103.24 was amended in 2011 as part of an overhaul of the Bank Secrecy Act and renumbered 31 C.F.R. § 1010.350. The amendments did not fundamentally alter the reporting obligations under Section 5314 but clarified key terms and concepts already included in the regulation. Section 103.24 is the version of the regulation in effect during the tax years at issue.

also tardily filed FBARs for 2006 and 2007 on June 26, 2010, after the IRS learned of the foreign accounts at issue and Defendant's failure to report them on FBARs through an audit. The FBARs Defendant submitted did not include the FirePay account in 2006.  On September 20, 2011, the IRS assessed Defendant with civil penalties under 31 U.S.C. § 5321(a)(5) for his non-willful failure to notify the Commissioner, and submit FBARs to the IRS, as required by 31 U.S.C. § 5314, regarding his interest in the three foreign accounts with FirePay.com, PokerStars.com, and PartyPoker.com.

## ISSUES PRESENTED

The ultimate issue to be decided is whether Defendant was required to report his FirePay.com, PokerStars.com, and Partypoker.com accounts in 2006, and his PokerStars.com account in 2007, to the Commissioner and file FBARs reporting those accounts with the IRS. That determination requires resolution of several elements and defenses raised by Defendant:

1.      Was Defendant a United States citizen or resident during 2006 and 2007?

2.      Are Defendant's accounts at FirePay.com, PokerStars.com, and Partypoker.com "bank, securities, or other financial account[s]" under 31 U.S.C. §§ 5312, 5314 and 31 C.F.R. § 103.24(a)?

3.      Are Defendant's FirePay.com, PokerStars.com, and Partypoker.com accounts "in a foreign country" under 31 U.S.C. §§ 5312, 5314 and 31 C.F.R. § 103.24(a)?

4.      Are the assets from Defendant's PokerStars.com, and Partypoker.com accounts held in "foreign commingled funds" under IRS Notice 2009-62 (and modified by IRS Notice 2010-23) such that the filing deadline for FBARs for those accounts for 2006 and 2007 was extended to June 30, 2010?

5.      Was Defendant's failure to timely file his FBARs due to reasonable cause and the amount of the transaction or the balance in the account at the time of the transaction was properly reported as set forth in 31 U.S.C. § 5321(a)(5)(B)(ii)?

6.      Did the IRS assess the FBAR penalties at issue within the six-year statute of limitations found in 31 U.S.C. § 5321(b)(1)?

**RELEVANT FACTS**

## I.    Defendant's Education and Work History

Defendant moved to the United States from China when he was a child and resided in San Francisco, California, until he graduated from high school.  *See* Declaration of Jeremy N. Hendon ("Hendon Decl."), Exhibit ("Ex.") 4 (Hom Dep. at 17, 24).   He then attended the University of California Berkeley where he obtained his bachelor's degree in civil engineering in 1972.  *Id*. (Hom Dep. at 17)  Thereafter he started working for a local firm that then transferred him to Alaska for a few years working as a civil engineer.  *Id*. (Hom Dep. at 19) Defendant then returned to the San Francisco Bay area where he became a stockholder and Vice President of a different geotechnical engineering firm and worked there until he opened his own geotechnical engineering firm in 1984, which he has owned and operated consecutively through the present. *Id*. (Hom Dep. at 19-20)  Defendant is currently a licensed geotechnical engineer with the State of California.  *Id*. (Hom Dep. at 17-18)  He has also been retained to provide expert testimony regarding civil engineering issues in several court cases beginning in 1982.  *Id*. (Hom Dep. at 12-13, 20)  In addition, Defendant has also owned a laundromat and a rental property.  *Id*. (Hom Dep. at 21-22)

Defendant has a United States passport.  *Id*. (Hom Dep. at 25) During the period 2003-2007, Defendant was present in the United States for more than one-half of the days of each of those years.  *Id*.

## II.    Defendant's Online Poker Gambling

Defendant also is a professional gambler involved in two distinct types of gambling: online poker playing and casino poker playing.  *Id*. (Hom Dep. at 26)  During 2006, Defendant had accounts with PokerStars.com and Partypoker.com through which he engaged in online poker gambling.  *Id*. (Hom Dep. at 26-27); Hendon Decl., Ex. 5 (Answer to Request for Admission ("RFA") Nos. 3-5.  In 2007, Defendant still had his account with PokerStars.com through which he engaged in online poker gambling.  *Id*., Hendon Decl., Ex. 5, RFA Nos. 3, 6. Defendant had a username and password for each of his PokerStars and PartyPoker accounts. *Id*., RFA Nos. 3-4.  In 2006, Defendant also had an account at FirePay.com.  *Id*., RFA No. 2.

FirePay is an online financial business that was publicly traded on the AIM market of the London Stock Exchange. *Id*. RFA No. 15; Hendon Decl., Ex. 6. A FirePay account has the ability to receive funds from the account holder through their domestic bank account, hold funds for the account holder, and pay and receive funds through electronic transfers on behalf of the account holder as well as purchase goods and services online for the account holder. *Id*., Ex. 4 (Hom Dep. at 38-39, 45) Ex. 6, p. 1; Exs. 7-9.[2] FirePay is currently owned by Optimal Payments (Ireland) Limited, but was formerly known as FireOne Group, plc (until March 2007), which was a publicly traded company on the AIM market of the London Stock Exchange. *Id*., Ex. 9. Defendant had his own account at FirePay with a separate username and password. *Id*., Ex. 4 (Hom Dep. at 42-43) Defendant could make deposits to and withdrawals from his FirePay account. *Id*. (Hom Dep. at 43, 46, 57-58)

PokerStars.com is an internet gambling site organized and operated in the Isle of Man. *Id*. (Hom Dep. at 30-31, 84-85); Exs. 8, 10-11. PokerStars is licensed with the Isle of Man Gambling Supervision Commission. *Id*., Ex. 4 (Hom Dep. at 102); Ex. 5, RFA No. 19; Exs. 8, 10-11. If Defendant had any issues or problems with PokerStars, he would have to lodge a complaint with the Isle of Man gaming commission. *Id*., Ex. 4 (Hom Dep. at 86); Ex. 10, p. 1 (US0445); Ex. 11, p. 10. If Defendant were to mail anything to PokerStars he would send it to an address in the Isle of Man. *Id*., Ex. 4 (Hom Dep. at 99, 101-02) Defendant had an account with PokerStars with his own username and password. *Id*. (Hom Dep. at 76, 78); Ex. 5, RFA No. 3 Defendant could deposit money into and make withdrawals from his PokerStars account. *Id*., Ex. 4 (Hom Dep. at 79-80, 103) Defendant could carry a balance in his PokerStars account. *Id*. (Hom Dep. at 103, 146) PokerStars' customers' account balances are held in segregated accounts, not used for any operational expenses, and those segregated accounts are managed by "one of Europe's leading financial services groups." *Id*., Ex. 10, p. 14 (US0458).

---

[2]Ex. 8 consists of the "Facts" portions of the United States' and Defendant's Case Management Statements filed in this case (Dkts. 16, 17). Defendant admits to the facts set forth in the first two paragraphs of the United States' Case Management Statement. Thus, whenever Ex. 8 is cited as support for a factual statement, it is derived from Defendant's admission of that fact as part of the parties' respective Case Management Statements.

PartyPoker.com is an internet poker gambling site that was under the PartyGaming Group and now is bwin.party digital entertainment plc. *Id.*, Exs. 8, 12-13. PartyPoker (and the PartyGaming Group/bwin) is licensed and regulated by the Government of Gibraltar and is headquartered in Gibraltar. *Id.*, Ex. 4 (Hom Dep. at 30-31, 111); Ex. 5, RFA No. 16; Exs. 8, 12-13. Defendant had an account with PartyPoker with his own username and password. *Id.*, Ex. 4 (Hom Dep. at 110); Ex. 5, RFA No. 4. Defendant could deposit money into and make withdrawals from his PartyPoker account. *Id.*, Ex. 4 (Hom Dep. at 115-16) Defendant could carry a balance in his PartyPoker account. *Id.* (Hom Dep. at 147) If Defendant had any issues or problems with PartyPoker they would have to be resolved with the Government of Gibraltar. *Id.* (Hom Dep. at 112); Exs. 12-13.

Defendant used his account at FirePay to fund his online poker gambling accounts at PokerStars.com and Partypoker.com. *Id.* (Hom Dep. at 38, 40, 110) Specifically, Defendant would deposit funds from his domestic Wells Fargo bank account into his FirePay account and then would transfer or deposit the funds from his FirePay account into his PokerStars.com and PartyPoker.com accounts when he wanted to play online poker. *Id.* (Hom Dep. at 38, 40) He could also deposit funds directly into his PokerStars.com and PartyPoker.com accounts by using Western Union. *Id.*, (Hom Dep. at 75) In late 2006, FirePay voluntarily ceased allowing United States customers to transfer funds from their FirePay accounts to offshore internet gambling sites. *Id.*, Ex. 14. Thereafter, Defendant utilized other online financial sites such as Echeck and InstaCash, or Western Union, to transfer money from his domestic Wells Fargo bank account to his PokerStars account in order for him to continue to engage in online poker gambling. *Id.*, Ex. 4 (Hom Dep. at 121-24) If Defendant wanted funds in his PokerStars or PartyPoker accounts returned to him, he would either have the companies mail him a check or he would transfer the funds back to his FirePay account and then from there, transfer the funds back to his domestic Wells Fargo bank account. *Id.* (Hom Dep. at 45-46, 116) At some point during 2006, the aggregate amount of funds in Defendant's FirePay, PokerStars and PartyPoker accounts exceeded $10,000 in United States. *Id.*, Ex. 5, RFA No. 20. At some point during 2007, the aggregate amount of funds in Defendant's PokerStars account exceeded $10,000 in United States

1    currency. *Id*., RFA No. 21.

2        Defendant filed his federal income tax return (Form 1040) for 2006 and included a

3    Schedule C identifying his involvement in professional gambling activity. *Id*., Ex. 8. Defendant

4    failed to file a Form 1040 for 2007 with the IRS so the IRS opened an examination to determine

5    Defendant's correct federal income tax liabilities. *Id.*; *see also* Ex. 4, (Hom Dep. at 155)

6    During the income tax examination, the IRS became aware of Defendant's online gambling

7    activities and his use of foreign accounts to facilitate such activities. Defendant disclosed that he

8    had won $44,000 in an online poker tournament in 2006 through his PokerStars account. *Id*., Ex.

9    4 (Hom Dep. at 45-46) Through the use of his PokerStars and FirePay accounts, Defendant

10   immediately caused $15,000 of those winnings to be transferred back to his domestic Wells

11   Fargo account. *Id*. (Hom Dep. at 47) The remainder of the winnings stayed in his FirePay and

12   PokerStars accounts which he mostly used to participate in other online poker games. *Id*.

13   Defendant had not disclosed that he had the offshore FirePay account or the online gambling

14   accounts at that time. *Id*. (Hom Dep. at 163) Based on this information, the IRS opened an

15   FBAR examination.

16       The IRS Revenue Agent issued a summons to Defendant as part of the income tax

17   examination requesting account statements regarding Defendant's FirePay, PokerStars, and

18   PartyPoker accounts. *Id*., Ex. 15 (Summons). Defendant refused to comply and the United

19   States filed a summons enforcement action in the United States District Court for the Northern

20   District of California on June 2, 2010, Case No. 3:10-cv-2435-JL. *Id*. On September 27, 2010,

21   the Court issued an order enforcing the summons. *Id*., Ex. 16. Thereafter, Defendant produced

22   responsive documents.

23       The deadline for timely filing an FBAR is June 30 with respect to foreign financial

24   accounts exceeding $10,000 maintained during the previous calendar year. *See* 31 C.F.R. §

25   103.27(c). Defendant tardily filed FBARs for 2006 and 2007 on June 26, 2010, after the IRS

26   learned of his failure to timely do so. *Id*., Ex. 4 (Hom Dep. at 136-37); Ex. 5, RFA Nos. 22; Exs.

27   17-18. Defendant's submitted FBAR for 2006 did not include the FirePay account. *Id*., Ex. 4

28   (Hom Dep. at 138); Ex. 17. At the time the 2006 and 2007 FBARs would have been due (*i.e.*

1   June 20, 2007 and June 30, 2008), Defendant did not seek any advice from attorneys,

2   accountants, or tax return preparers as to whether he was required to file FBARs for his FirePay

3   and online poker gambling accounts. *Id.*, Ex. 4 (Hom Dep. at 149-52); Ex. 5, RFA No. 23.

4   Defendant did not take any other steps at that time to determine whether he was required to file

5   FBARs for his FirePay and online poker gambling accounts. *Id.*, Ex. 4 (Hom Dep. at 152)

6   Defendant also admitted that he did not notice the requirement on his federal tax return (Form

7   1040) to denote whether he had any foreign accounts. *Id.* (Hom Dep. at 149)

8       On September 20, 2011, the IRS assessed Defendant with civil penalties under 31 U.S.C.

9   § 5321(a)(5) for his non-willful failure to submit FBARs, as required by 31 U.S.C. § 5314,

10  regarding his interest in his FirePay, PokerStars, and PartyPoker accounts. *Id.*, Exs. 1-2; Ex. 5,

11  RFA Nos. 24-25.  The IRS assessed a $30,000 penalty for 2006, which was comprised of a

12  $10,000 penalty for each of the three accounts, and a $10,000 penalty for 2007 based on only

13  Defendant's PokerStars account.  *Id.*  As of July 26, 2013, Defendant owed $45,178.09.  *Id.*, Ex.

14  3.  Interest and penalties continue to accrue until paid in full pursuant to 31 U.S.C. § 3717.

15  **POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES' MOTION**

16  **I.    Summary Judgment Standard**

17      Under Federal Rule of Civil Procedure 56, summary judgment is proper whenever "the

18  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

19  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

20  party is entitled to judgment as a matter of law."

21      The party seeking summary judgment bears the initial burden of showing the absence of

22  a genuine issue of material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Zoslaw*

23  *v. MCA Distribution Corp.*, 693 F.3d 870, 883 (9th Cir. 1982), *cert. denied*, 460 U.S. 1085

24  (1983).  After the movant meets this burden by presenting evidence which, if uncontroverted,

25  would entitle it to a directed verdict at trial, the respondent must set forth specific facts that

26  demonstrate that there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

27  242, 250 (1986).  If the factual context makes the respondent's claim implausible, that party

28  must present more persuasive evidence that there is a genuine issue for trial than would

1   otherwise be necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *California*

2   *Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th

3   Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988).

4          When the party seeking summary judgment meets its burden, summary judgment will be

5   granted unless there is significant probative evidence tending to support the opponent's legal

6   theory.  *See First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 290 (1968); *Commodity*

7   *Futures Trading Com. v. Savage*, 611 F.2d 270 (9th Cir. 1979).  Parties seeking to defeat

8   summary judgment cannot stand on their pleadings once the movant has submitted affidavits or

9   other similar materials.  Affidavits that do not affirmatively demonstrate personal knowledge are

10  insufficient.  *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert.*

11  *denied*, 440 U.S. 981 (1979).  Likewise, "legal memoranda and oral argument are not evidence

12  and do not create issues of fact capable of defeating an otherwise valid motion for summary

13  judgment." *Id.*

14         The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded

15  not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

16  whole, which are designed 'to secure the just, speedy and inexpensive determination of every

17  action.'" *Celotex*, 477 U.S. at 327.  *See also Avia Group Int'l. Inc. v. L.A. Gear California, Inc.*,

18  853 F.2d 1557, 1560 (Fed. Cir. 1988).

19  **II.     General FBAR Legal Background**

20         31 U.S.C. § 5314, and the implementing regulations, require U.S. citizens or residents to

21  report their relationship or account with a foreign financial agency and provides that the

22  Secretary of the Treasury shall prescribe the way in which, and the extent that, such information

23  is provided.  31 C.F.R. § 103.24 requires each person subject to the jurisdiction of the United

24  States having a "financial interest in, or signature authority over, a bank, securities, or other

25  financial account in a foreign country" to report such relationship to the Commissioner for each

26  year in which such relationship exists and provide this information in a reporting form prescribed

27  by the Secretary to be filed by such persons.

28              The Secretary implemented the regulatory requirements with a two-step
               reporting process. Form 1040, Schedule B, Part III instructed a taxpayer

to indicate an interest in a financial account in a foreign country by checking "Yes" or "No" in the appropriate box. Form 1040 then referred the taxpayer to Form 90-22.1 which provided that it should be used to report a financial interest in or authority over bank accounts, securities accounts, or other financial accounts in a foreign country.

*United States v. Clines*, 958 F.2d 578, 581-82 (4th Cir.), *cert. denied*, 505 U.S. 1205 (1992).

"Reports required to be filed by § 103.24 shall be filed with the Commissioner of Internal Revenue on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 103.27(c). If a person subject to the jurisdiction of the United States fails to submit an FBAR to the IRS when required to do so under 31 U.S.C. § 5314, civil penalties may be imposed by the Secretary of the Treasury. *See* 31 U.S.C. § 5321(a)(5)(A). For non-willful violations occurring after October 22, 2004, the amount of the civil penalty shall not exceed $10,000. *See* 31 U.S.C. § 5321(a)(5)(B)(i). No penalty shall be imposed, however, if the violation was due to reasonable cause and the amount of the transaction or the balance in the account at the time of the transaction was properly reported. *See* 31 U.S.C. § 5321(a)(5)(B)(ii).

Reporting to the Commissioner and filing of the FBAR is required for a reporting year when all of the following are met: (1) the filer is a United States person; (2) the United States person has a financial interest in, or signature or other authority over, a bank, securities, or other financial account; (3) the bank, securities, or other financial account is in a foreign country and (4) the aggregate amount in the accounts exceeds $10,000 in U.S. currency at any time during the year. *See* 31 C.F.R. §§ 103.24(a); 103.27(c); *see also* 31 U.S.C. § 5314.

## III. Defendant is a United States citizen and/or resident.

The first element in determining whether an individual is required to file an FBAR is whether the individual is a "United States person." *See* 31 C.F.R. § 103.24. "United States person" is defined as a United States citizen or a resident of the United States (who is a resident alien under 26 U.S.C. § 7701(b)). *See* 31 C.F.R. § 1010.350(b). Defendant is a United States citizen because he holds a United States passport. *See* 22 U.S.C. § 2705; *Magnuson v. Baker*, 911 F.2d 330, 333 (9th Cir. 1990). In the alternative, Defendant could also be considered a resident of the United States because he would pass the substantial presence test as a resident

alien under 26 U.S.C. § 7701(b).  During the period 2004-2007, Defendant was present in the United States more than one-half the number of days for each year.  *See* Hendon Decl., Ex. 4 (Hom Dep. at 25)  Thus, he would meed the substantial presence test in 26 U.S.C. § 7701(b)(3).

## IV.    Defendant had a financial interest in, or signatory authority over, three bank or other financial accounts during 2006 and 2007.

The next element is also met.  Defendant does not dispute that he had a financial interest, or signatory authority over, his accounts at FirePay.com, PokerStars.com, and PartyPoker.com in 2006 and his account at PokerStars.com in 2007.  Instead, Defendant's argument is that those accounts are not "bank or other financial accounts" for purposes of the applicable statute and regulations.  Defendant is wrong.

As discussed above, Section 5314 requires individuals who maintain a relation with a foreign financial agency to file a report of that relation or transaction with the IRS.  "Financial agency" is defined as "a person acting for a person . . . as a financial institution, bailee, depository trustee, or agent, or acting in a similar way related to money, credit, securities, gold or a transaction in money, credit, securities, or gold."  31 U.S.C. § 5312(a)(1).  A "foreign financial agency" applies to an action outside the United States of a financial agency.  31 U.S.C. § 5312(b)(2).

The version of 31 C.F.R. § 103.24(a) in effect during 2006 and 2007 did not define "bank securities, or other financial account."  The General Instructions accompanying the FBAR form for 2006 and 2007, however, defined financial account to include, in relevant part,

> any savings, demand, checking, deposit, time deposit, or any other account (including debit card and prepaid credit card accounts) maintained with a financial institution or other person engaged in the business of a financial institution.

*See* Hendon Decl., Exs. 17 & 18, p. 6.  Congress defined "financial institution" in Section 5312(a)(2) by listing 26 different things that qualify.  Based on the breadth of the definition, the Ninth Circuit has stated that "the term 'financial institution' is to be given a broad definition." *United States v. Dela Espriella*, 781 F.2d 1432, 1436 (9th Cir. 1986).

The Fourth Circuit held that a company maintained by a third party and its employees, which transmitted or disbursed funds for the United States person at his direction functioned as a

1    bank and is therefore a "financial institution" for purposes of Section 5312(a)(2).  *See Clines*,

2    958 F.2d at 582.  That Court also held that the same company operated as "a licensed sender of

3    money" or engaged in the business of facilitating the transfer of money abroad for others because

4    it sent wire transfers of funds to the United States person's United States bank account and to the

5    person's other foreign account to pay a safe deposit box fee.  *Id*.  That Court further found that

6    because the company accepted credits to and transmitted sums from a captial account maintained

7    on the company's ledger to the United States person's other domestic and foreign accounts, it

8    was an "other financial account."  *Id*.

9        Defendant's FirePay, PokerStars, and PokerPlayer accounts meet the definition of a

10    "foreign financial agency" because those companies were "financial institutions" for purposes of

11    Section 5312 and the FBAR General Instructions.  For example, Defendant opened up all of the

12    accounts in his name, had a username and password login access to the accounts, deposited

13    money into the accounts from other accounts, withdrew or transferred money from the accounts

14    to other accounts, and could carry a balance in the accounts.  Like the entity in question in

15    *Clines*, FirePay, PokerStars, and PokerPlayer all had accounts for Defendant that held

16    Defendant's funds, transferred or disbursed the funds at Defendant's discretion, allowed

17    Defendant to keep a balance, and separately kept track of Defendant's balance in each account.

18    In addition, with respect to the PokerStars and PartyPoker accounts, Defendant applied the funds

19    from those accounts to buy into poker games to make bets and when he decided to leave the

20    poker games, Defendant would have any money leftover that was "in play" credited back to his

21    accounts.  With respect to the FirePay account, Defendant could purchase goods and services

22    online from various merchants using the funds in his FirePay account.  These attributes all

23    demonstrate that FirePay, PokerStars, and PokerPlayer are "financial institutions" as either a

24    "bank" under Section 5312(a)(2)(B) or a "licensed sender of money" or "person who engages as

25    a business in the transmission of funds" under Section 5312(a)(2)(R).

26        Accordingly, Defendant's FirePay, PokerStars, and PartyPoker accounts meet the

27    definition of "bank or other financial account" under 31 C.F.R. § 103.24 and 31 U.S.C. § 5312.

28

1    **V.    Defendant's FirePay, PokerStars, and PartyPoker accounts are in a foreign country.**

2        The third element is also met because the three accounts at issue were administered from

3    where the financial institution's were located and regulated: Defendant's FirePay account was in

4    London, Defendant's PokerStars account was in the Isle of Man, and Defendant's PartyPoker

5    account was in Girbraltar.  Defendant contends that his FirePay, PokerStars, and PartyPoker

6    accounts are not in a foreign country or are foreign accounts.  *See* Answer, ¶ 23.  Defendant is

7    wrong.

8        **A.    FirePay accounts are in a foreign country.**

9        FirePay is an online financial business that was publicly traded on the AIM market of the

10    London Stock Exchange.  FirePay is currently owned by Optimal Payments (Ireland) Limited,

11    but was formerly known as FireOne Group, plc (until March 2007), which was a publicly traded

12    company on the AIM market of the London Stock Exchange.  Defendant accessed this account

13    only through the internet.  Defendant is not aware of, nor has any evidence, that FirePay had any

14    offices or branch locations in the United States.  Accordingly, the evidence establishes that

15    FirePay accounts are in a foreign country.

16        Defendant is likely to assert that FirePay ceased any account deposits from United States

17    poker players to internet poker gambling sites in response to the UIGEA and speculate that it

18    would not have done so if it were not a United States financial institution because the UIGEA

19    only applies to United States financial institutions.  Defendant has no evidence as to why FirePay

20    may have ceased any account deposits to internet poker gambling sites.  It is just as likely that

21    FirePay ceased those account deposits because it wanted to continue conducting business with

22    United States customers and/or remain in good standing with United States officials.

23    Defendant's unsupported speculation does not raise a disputed issue of fact to preclude summary

24    judgment.  *See Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (speculation as to

25    defendant's improper motive does not rise to the level of evidence sufficient to state a triable

26    issue of fact).  The undisputed evidence establishes that FirePay accounts were in a foreign

27    country.

28

1

**B.    PokerStars accounts are in a foreign country.**

2

Similarly, Defendant accessed his PokerStars account only through the internet.

3

PokerStars.com is an internet gambling site organized and operated in the Isle of Man.

4

PokerStars is licensed with the Isle of Man Gambling Supervision Commission.  Defendant only

5

accessed his PokerStars account online and if he had any disputes, he would have to send it to an

6

address in the Isle of Man.  Defendant is not aware of, nor has any evidence, that PokerStars had

7

any offices or branch locations in the United States but knows that PokerStars has an address in

8

the Isle of Man.  Accordingly, the undisputed evidence establishes that PokerStars accounts are

9

in a foreign country.[3]

10

**C.    PartyPoker accounts are in a foreign country.**

11

Similarly, Defendant accessed his PartyPoker account only through the internet.

12

PartyPoker.com is an internet poker gambling site under the PartyGaming Group.  PartyPoker

13

(and the PartyGaming Group/bwin) is licensed and regulated by the Government of Gibraltar.  If

14

Defendant had any issues or problems with PartyPoker they would have to be resolved with the

15

Government of Gibraltar.  Defendant is not aware of, nor has any evidence, that PartyPoker had

16

any offices or branch locations in the United States.  Accordingly, the undisputed evidence

17

establishes that PartyPoker accounts are in a foreign country.

18

**VI.    The aggregate amount in Defendant's FirePay, PokerStars, and PartyPoker
accounts  exceeded $10,000 in United States currency during 2006 and 2007.**

19

20

The last element is also met.  Defendant admits that during some point in 2006, the

21

aggregate amount of funds in his Firepay, PokerStars and PartyPoker accounts exceeded $10,000

22

in United States currency.  Defendant also admits that at some point in 2007, the aggregate

23

amount of funds in his PokerStars account exceeded $10,000 in United States currency.  Thus,

24

this element is not in dispute.

25

26

[3]Defendant admitted during his deposition that if PokerStars or PartyPoker were United

27

States companies, they would have issued to him Form W-2G (similar to a Form 1099) to report
any gambling winnings he had and that he had received them from Nevada casinos when he had

28

winnings.  *See* Hendon Decl., Ex. 4 (Hom Dep. at 107-09).  Defendant did not receive any such
Form W-2G from PokerStars or PartyPoker.  *Id.*

1    **VII.    Defendant's other defenses do not have merit.**

2        The United States has established that all of the elements have been met to find that

3    Defendant was required to file FBARs for his three foreign accounts.  Defendant has raised

4    several defenses, some of which have already been covered above and some are covered below.

5        **A.    IRS Notice 2009-62 does not apply to Defendant's accounts.**

6        Defendant's FBARs for 2006 were due to be filed with the IRS on June 30, 2007 and his

7    FBAR for 2007 was due to be filed with the IRS on June 30, 2008.  *See* 31 C.F.R. § 103.27(c).

8    Defendant tardily filed his FBARs for 2006 and 2007 on June 26, 2010.  Defendant contends that

9    the deadline for filing his FBARs was administratively extended by IRS Notice 2009-62 to June

10   30, 2010.[4]  Defendant is wrong.

11       While it is true that IRS Notice 2009-62 administratively extended the deadline for

12   individuals to file an FBAR with the IRS in certain situations, Defendant's accounts do not fall

13   within those two situations.  The first covered situation pertained to persons with signature

14   authority over, but no financial interest in, a foreign financial account.  That does not apply here.

15   The second covered situation pertained to persons with a financial interest in, or signature

16   authority over, a "foreign commingled fund."  Defendant will contend that if his PokerStars and

17   PartyPoker accounts are foreign, then the assets of those accounts were held in a "foreign

18   commingled fund" and IRS Notice 2009-62 gave him until June 30, 2010 by which to file his

19   FBARs.  Defendant's argument is premised on a very basic definition of "commingle" such that

20   he believes that the owners of PokerStars and PartyPoker took the money from his account and

21   commingled it with the money from all other account holders and therefore created a

22   commingled fund.  *See* Hendon Decl., Ex. 4 (Hom Dep. at 143).

23       Defendant's argument is misplaced.  First, Defendant's accounts are not "commingled

24   funds."  The IRS provided in the General Instructions to the FBAR forms for 2006 and 2007 that

25   a "financial account" for purposes of the FBAR reporting requirements would "generally also

26   encompass any accounts in which the assets are held in a commingled fund, *and the account*

27   _____

28       [4]IRS Notice 2010-23 provided further clarification regarding the information provided for
     in IRS Notice 2009-62 but kept the same June 30, 2010 filing deadline.

1  *holder holds an equity interest in the fund* (including mutual funds)." *See* Hendon Decl., Exs. 17

2  & 18, p. 6 (emphasis added).  Even if the owners of PokerStars and PartyPoker took the money

3  from Defendant's accounts and commingled it with the money from all other account holders, it

4  cannot be said that Defendant had an equity interest in the newly created account.  An equity

5  interest means an ownership interest.  Defendant has no basis to claim an ownership interest in

6  any such newly created account held in the name of PokerStars or PartyPoker as he is neither a

7  shareholder nor executive of either of those companies.

8  Second, Defendant has provided no evidence that the owners of PokerStars and

9  PartyPoker took the money from his account and commingled it with the money from all other

10  account holders.  Defendant speculates that may have occurred which is insufficient.  PokerStars

11  explicitly stated on its website, however, that it does not do that and instead stated that its

12  customers' account balances are held in segregated accounts, not used for any operational

13  expenses, and those segregated accounts are managed by "one of Europe's leading financial

14  services groups." *See* Hendon Decl., Ex. 10, p. 14 (US0458).

15  Accordingly, Defendant's accounts are not "commingled funds" and the administrative

16  relief in IRS Notice 2009-62 does not apply.

17  **B.    Defendant did not act with reasonable cause in failing to submit his FBARs.**

18  Defendant has asserted in his Answer that he is entitled to the reasonable cause defense

19  such that he should not be liable for the non-willful FBAR penalties assessed against him.  No

20  FBAR non-willful penalty shall be imposed if the violation was due to reasonable cause and the

21  amount of the transaction or the balance in the account at the time of the transaction was

22  properly reported. *See* 31 U.S.C. § 5321(a)(5)(B)(ii).  Neither the statute nor the regulations

23  provide a standard to be utilized in determining whether the reasonable cause defense applies.

24  Congress has provided a similar reasonable cause defense to the imposition of civil penalties for

25  failure to timely file tax returns and timely pay taxes. *See* 26 U.S.C. § 6651(a).  The IRS

26  implemented regulations under Section 6651 stating that reasonable cause applies if the taxpayer

27  "exercised ordinary business care and prudence and was nevertheless unable to file the return

28  within the prescribed time" (26 C.F.R. § 301.6651–1(c)(1)) and/or by making "a satisfactory

showing that he exercised ordinary business care and prudence in providing for the payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship ... if he paid [the tax] on the due date." 26 C.F.R. § 301.6651–1(c)(1). The Court should adopt a similar standard here for reasonable cause in failing to timely report, and file FBARs for, foreign accounts.

Under that standard Defendant did not act with ordinary business care and prudence. Defendant did not file his federal income tax returns and the IRS was required to open an examination to determine his correct federal tax liabilities. During the examination, Defendant did not comply with the summons the IRS Revenue Agent issued to him seeking records pertaining to his FirePay, PokerStars, and PartyPoker accounts and only produced the records after the United States was forced to file a petition seeking enforcement of the summons. Further, Defendant did not seek any advice from attorneys, accountants, or tax return preparers as to whether he was required to file FBARs for his FirePay and online poker gambling accounts at the time the FBARs were due. Defendant did not take any other steps at that time to determine whether he was required to file FBARs for his FirePay and online poker gambling accounts. To the extent that Defendant may have sought such advice or conducted research about whether he was required to file FBARs for his accounts long after the due date for filing the FBARs is of no consequence. Even after he tardily submitted his FBARs to the IRS he still did not include his FirePay account. Because there are no disputed issues of material fact as to what Defendant did (or failed to do) and what he did do does not amount to exercising ordinary care and prudence, Defendant's reasonable cause defense fails and summary judgment is appropriate.

**C.    The IRS timely assessed the civil non-willful FBAR penalties.**

Defendant asserted in his Answer "the Statute of Limitations Defense under 31 USC § 5321(b)." Answer, ¶ 24. Contrary to Defendant's bald assertion, the IRS timely assessed the civil non-willful FBAR penalties against Defendant. The statute of limitations for the IRS to assess civil FBAR penalties is "at any time before the end of the 6-year period beginning on the date of the transaction with respect to which the penalty is assessed." 31 U.S.C. § 5321(b)(1). The United States has two years from the date the FBAR penalties were assessed in which to

1  commence a civil action to reduce the FBAR penalty assessments to a judgment. *See* 31 U.S.C.

2  § 5321(b)(2).

3         On September 20, 2011, the IRS assessed Defendant with civil non-willful FBAR

4  penalties totaling $30,000 for 2006, which was comprised of a $10,000 penalty for each of

5  Defendant's FirePay, PokerStars, and PartyPoker accounts, and a $10,000 penalty for 2007

6  based on only Defendant's PokerStars account.  The FBAR penalty at issue here is based on

7  Defendant's failure to timely report his transaction with a foreign financial agency under Section

8  5314.  Therefore, "the date of the transaction with respect to which the penalty is assessed" is the

9  due date for filing the FBAR with the IRS.  That means the statute of limitations for 2006

10  expired on June 30, 2013, six years after it was due on June 30, 2007, and for 2007 expired on

11  June 30, 2014, six years after it was due on June 30, 2008.  Since the IRS assessed the FBAR

12  penalties against Defendant on September 20, 2011, those assessments were timely made.  In

13  addition, the United States timely filed the Complaint in this action on August 12, 2013 (Dkt. 1),

14  because that filing date was less than two years after the September 20, 2011 assessment date.

15  *See* 31 U.S.C. § 5321(b)(2).

## CONCLUSION

17        Based on the foregoing reasons, the Court should grant the United States' Motion for

18  Summary Judgment and enter Judgment against Defendant, John C. Hom, in the amount of

19  $45,178.09, calculated as of July 26, 2013, plus additional statutory interest and penalties

20  pursuant to 31 U.S.C. § 3717 until paid in full.

                                          Respectfully submitted,

22  Dated: <u>February 27, 2014</u>          MELINDA HAAG
                                          United States Attorney

23
                                          THOMAS M. NEWMAN (NYSBN 4256178)
24                                         Assistant United States Attorney

25                                          /s/ Jeremy N. Hendon
                                          JEREMY N. HENDON (ORBN 982490)
26                                         Trial Attorney, Tax Division
                                          Department of Justice
27                                         P.O. Box 683, Ben Franklin Station
                                          Washington, D.C. 20044
28
                                          Attorneys for Plaintiff United States of America

1

CERTIFICATE OF SERVICE

2        IT IS HEREBY CERTIFIED that service of the **NOTICE OF MOTION AND UNITED**

3   **STATES' MOTION FOR SUMMARY JUDGMENT** has been made has been made this 27th

4   day of February, 2014, by placing a true copy thereof in the United States mail enclosed with an

5   envelope with postage thereon addressed to:

6

7            John C. Hom
             42 Oak Crest Drive
8            San Rafael, CA 94903

9

10                           /s Jeremy N. Hendon
                             JEREMY N. HENDON (ORBN 982490)
11                           Trial Attorney, Tax Division
                             U.S. Department of Justice
12                           Post Office Box 683
                             Ben Franklin Station
13                           Washington, D.C. 20044

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. SJ MOTION
C 13-03721 CRB                          -19-