IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN C. HOM,

    Defendant.

No. C 13-03721 WHA

**ORDER GRANTING SUMMARY JUDGMENT**

## INTRODUCTION

In this action involving the Bank Secrecy Act, the government moves for summary judgment. The motion is **GRANTED**.

## STATEMENT

The following facts are uncontested. During 2006, *pro se* defendant John Hom gambled online through internet accounts with PokerStars.com and PartyPoker.com (Hendon Decl., Exh. 5 at 1–2). In 2007, defendant continued to gamble online through his PokerStars account (Hendon Decl., Exh. 5 at 2). Both poker websites allowed defendant to deposit money or make withdrawals.

Defendant used his account at FirePay.com, an online financial organization that receives, holds, and pays funds on behalf of its customers, to fund his online PokerStars and PartyPoker accounts. He deposited money into his FirePay account via his domestic Wells Fargo bank account or other online financial institutions, such as Western Union. In 2006, FirePay ceased allowing United States customers to transfer funds from their FirePay accounts to

1  offshore internet gambling sites, so defendant used Western Union and other online financial
2  institutions to transfer money from his Wells Fargo bank account to his online poker accounts
3  (Hom Dep. at 38, 40, 45–46, 75, 110, 116, 121–24).  Defendant admits that at some points in
4  both 2006 and 2007, the aggregate amount of funds in his FirePay, PokerStars, and PartyPoker
5  accounts exceeded $10,000 in United States currency (Hendon Decl., Exh. 5 at 4).

6  After the Internal Revenue Service detected discrepancies in defendant's federal income
7  tax returns for 2006 and 2007, it opened a Foreign Bank and Financial Accounts Report
8  ("FBAR") examination (Hendon Decl., Exh. 15).  Individuals must file an FBAR with respect to
9  foreign financial accounts exceeding $10,000 maintained during the previous year by June 30.
10 31 C.F.R. 103.27(c).  Defendant did not file his 2006 or 2007 FBARs until June 26, 2010
11 (Hendon Decl., Exh. 5, at 4).  Moreover, his submitted FBAR for 2006 did not include his
12 FirePay account (Hom Dep. at 138).

13 On September 20, 2011, the IRS assessed defendant with civil penalties under 31 U.S.C.
14 5321(a)(5) for his non-willful failure to submit FBARs, as required by 31 U.S.C. 5314, regarding
15 his interest in his FirePay, PokerStars, and PartyPoker accounts.  The IRS assessed a $30,000
16 penalty for 2006, which included a $10,000 penalty for each of the three accounts, and a $10,000
17 penalty for 2007 based solely on defendant's PokerStars account (Hendon Decl., Exh. 5, at 5).
18 Interest and penalties continue to accrue until paid in full pursuant to 31 U.S.C. 3717.  This order
19 follows full briefing and oral argument.  The Court has tried to appoint a free lawyer for
20 defendant – but no one would take the case.

**ANALYSIS**

22 The Bank Secrecy Act of 1970 was enacted "to require certain reports or records where
23 they have a high degree of usefulness in criminal, tax, or regulatory investigations or
24 proceedings." *United States v. Clines*, 958 F.2d 578, 581 (4th Cir. 1992) (citations omitted),
25 *cert. denied*, 505 U.S. 1205 (1992).  To accomplish this end, the Act established reporting
26 requirements for transactions involving foreign financial agencies.  31 U.S.C. 5314.  The
27 provisions of the Act relating to foreign financial transactions resulted from the concern of
28 Congress that foreign financial institutions located in jurisdictions having laws of secrecy with

2

respect to bank activity were being used extensively to violate or evade domestic criminal, tax, and regulatory requirements. *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 27 (1974). The Act explicitly empowers the Secretary of the Treasury to determine the method in which covered persons should disclose their relationships or accounts with a foreign financial agency. 31 U.S.C. 5314.

According to the pertinent regulations, each person who is subject to the jurisdiction of the United States and has a "financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country" is required to report such relationship to the Commissioner for each year in which such relationship exists and provide this information in a reporting form prescribed by the Secretary to be filed by such persons. 31 C.F.R. 103.24. "Reports required to be filed by [Section] 103.24 shall be filed with the Commissioner of Internal Revenue on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. 103.27(c). If a person subject to the jurisdiction of the United States fails to submit an FBAR to the IRS when required to do so under 31 U.S.C. 5314, the Secretary of the Treasury may impose civil penalties. 31 U.S.C. 5321. In 2011, 31 C.F.R. 103.24 was amended and renumbered 31 C.F.R 1010.350. Section 103.24 was the version of the regulation in effect in 2006 and 2007, and the 2011 amendments did not fundamentally alter any of the reporting obligations.

For non-willful violations occurring after October 22, 2004, the amount of the civil penalty shall not exceed $10,000. 31 U.S.C. 5321(a)(5)(B). No penalty shall be imposed, however, if the violation was due to reasonable cause *and* the amount of the transaction or the balance in the account at the time of the transaction was properly reported. *Ibid*.

In sum, an individual must file an FBAR for a reporting year if: (1) he or she is a United States person; (2) he or she has a financial interest in, or signature or other authority over, a bank, securities, or other financial account; (3) the bank, securities, or other financial account is in a foreign country; and (4) the aggregate amount in the accounts exceeds $10,000 in U.S. currency at any time during the year.

### 1. UNITED STATES PERSON.

The first element is whether the individual is a "United States person." As both sides agree that defendant is a United States citizen "subject to the jurisdiction of the United States," this element is met (Opp. at 1). 31 C.F.R. 103.24.

### 2. INTEREST IN "A BANK, SECURITIES, OR OTHER FINANCIAL ACCOUNT."

The second element is whether defendant had a financial interest in, or authority over, a bank, securities, or other financial account in 2006 or 2007. Defendant does not contest in his opposition that he had a financial interest in his online FirePay, PokerStars, and PartyPoker accounts in 2006 and his online PokerStars account in 2007. Rather, defendant argues that those accounts are not a "bank or other financial accounts" for purposes of the applicable statute and regulations.

While our court of appeals has not yet answered what constitutes "other financial account[s]" under 31 C.F.R. 103.24, the Court of Appeals for the Fourth Circuit found that an account with a financial agency is a financial account under Section 5314. *Clines*, 958 F.2d at 582. Under Section 5312(a)(1), a "person acting for a person" as a "financial institution" or a person who is "acting in a similar way related to money" is considered a "financial agency." Section 5312(a)(2) lists 26 different types of entities that may qualify as a "financial institution." Based on the breadth of the definition, our court of appeals has held that "the term 'financial institution' is to be given a broad definition." *United States v. Dela Espriella*, 781 F.2d 1432, 1436 (9th Cir. 1986). The government claims that FirePay, PokerStars, and PartyPoker are all financial institutions because they function as "commercial bank[s]." Section 5312(a)(2)(B). The Fourth Circuit in *Clines* found that "[b]y holding funds for third parties and disbursing them at their direction, [the organization at issue] *functioned as a bank* [under Section 5314]." *Clines*, 958 F.2d at 582 (emphasis added).

So too here. Defendant admits that he opened up all three accounts in his name, controlled access to the accounts, deposited money into the accounts, withdrew or transferred money from the accounts to other entities at will, and could carry a balance on the accounts

4

(Hom Dep. at 38, 40, 45–46, 110, 116). As FirePay, PokerStars, and PartyPoker functioned as banks, defendant's online accounts with them are reportable.

Defendant alternatively argues that his online accounts are not "other accounts" according to the current regulations. The current regulations define a reportable account as including "bank account[s] . . . [which means] a savings deposit, demand deposit, checking, or any other account maintained with a person engaged in the business of banking." 31 C.F.R. 1010.350. As explained above, FirePay, PokerStars, and PartyPoker function as institutions engaged in the business of banking. Accordingly, defendant's accounts are reportable even under the current regulations.

### 3. THE FINANCIAL ACCOUNT IS IN A FOREIGN COUNTRY.

The third element is whether defendant's three financial accounts are located in foreign countries. The government argues that "located in" refers to where the financial institution that created and managed the account is located, whereas defendant argues that "located in" refers to the geographic location of the funds. As defendant has provided some evidence to suggest that PokerStars has several dozen bank accounts located in the United States, he asserts that "there is a real possibility that Defendant's funds are in an American bank" (Opp. at 2–3).

This order agrees with the government. It is irrelevant where PokerStars, FirePay, or PartyPoker opened *their* bank accounts. Those accounts belong to *them*, not defendant. Rather, *his* accounts are digital constructs that these financial institutions, all located outside of the United States, created and maintained on his behalf. FirePay is located in and regulated by the United Kingdom (Hendon Supp. Decl., Exh 19). PokerStars and its parent company, Rational Entertainment Enterprises Ltd., are licensed and regulated by the government of the Isle of Man (Hendon Supp. Decl., Exh. 20). PartyPoker and its parent company, PartyGaming, are licenced, regulated, and headquartered in Gibraltar (Hendon Supp. Decl., Exh. 26). These are the locations of his digital accounts, regardless of where the three companies place their own funds.

The Financial Crimes Enforcement Network of the Department of the Treasury has recently provided more guidance in its response to comments on its notice of proposed 2011 amendments to the Bank Secrecy Act, stating, "an account is not a foreign account under the

FBAR if it is maintained with a financial institution *located in the United States*." Final Regulations, 76 Fed. Reg. 10,235 (Feb. 24, 2011) (to be codified at 31 C.F.R. pt. 1010) (emphasis added); *see also* Michael I. Saltzman & Leslie Book, IRS Prac. & Proc. S7A-19 (Thompson Reuters ed., rev. 2d ed. Supp. 2014). The Department of Treasury's determination merits *Chevron* deference. Although the above statement is less than formal, Congress clearly delegated to the Department of the Treasury broad regulatory authority under 31 U.S.C. 5314 and its interpretation was issued with a "lawmaking pretense" via its notice of rulemaking. *Marmolejo-Campos v. Holder*, 558 F.3d 903, 908–10 (9th Cir. 2009). Here, Congress did not directly address the precise question at issue on the face of the statute and the Department of Treasury reasonably interpreted the statute in finding that an account's location is determined by the location of its host institution, not where the physical money might be stored after it is sent to financial institution. *Chevron v. NRDC*, 467 U.S. 837, 843, 865 (1984).

In support of his position, defendant cites to the general instructions from the 2010 FBAR form he tardily filed, which stated, "[t]he geographic location of the account, not the nationality of the financial institution in which the account is found determines whether it is an account in a foreign country." (Hendon Decl., Exh. 17 at HOM000404). That argument is unconvincing. The instructions contained within the FBAR form, as interpreted by defendant, have no legal weight because "interpretation by taxpayers of the language used in government pamphlets [cannot] act as an estoppel on the government, nor change the meaning of taxing statutes." *Adler v. Commissioner*, 330 F.2d 91, 93 (9th Cir. 1964). And even if the instructions had legal weight – even if they were determinative – there is no suggestion here that FirePay, PokerStars, and PartyPoker opened and maintained the defendant's *accounts* in the United States.

As defendant concedes, PokerStars, FirePay, and PartyPoker are all licensed and operated in foreign countries (Br. at 2, Dkt. No. 41). These foreign countries are where the companies created and maintained defendant's online accounts. Accordingly, this order finds that defendant's accounts are all located in foreign countries.

**4.    $10,000 REQUIREMENT.**

1  The fourth element is that the aggregate amount in the accounts exceeds $10,000 in U.S. currency at any time during the reporting year. Here, defendant admits that there was, in aggregate, at least $10,000 at some time during both 2006 and 2007 in his online PokerStars, FirePay, or PartyPoker accounts (Hendon Decl., Exh. 5 at 4). Accordingly, this element is met.

### 5. AFFIRMATIVE DEFENSES.

Defendant argues that even if he is liable, the amount of penalty assessed was too high because it *might* contravene the "Internal Revenue Manual" (Opp. at 3). Our court of appeals, however, has foreclosed that argument by holding that "[t]he Internal Revenue Manual does not have the force of law and does not confer rights on taxpayers." *Fargo v. Comm'r of Internal Revenue*, 447 F.3d 706, 713 (9th Cir. 2006). Thus, defendant's argument fails.

Defendant also requests that ruling on the government's summary judgment motion be delayed to allow further discovery. Yet, defendant has not identified any additional discovery or facts that might preclude summary judgment. *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002). Accordingly, defendant's request is **DENIED**.

### 6. JUDICIAL NOTICE.

The government seeks judicial notice of factual documents found on the internet. Defendant opposes. While our court of appeals has not yet ruled on whether information found on the internet may be judicially noticed, other circuit courts have judicially noticed reliable internet sources, such as government websites. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (*per curiam*); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003). While parties are certainly not entitled to judicial notice of all internet sources, several judges in this district have judicially noticed information found on official government webpages or other reliable internet sources. *See, e.g., Paralyzed Veterans of Am. v. McPherson*, 2008 U.S. Dist. LEXIS 69542, at *17–18 (N.D. Cal. Sept. 8, 2008) (Judge Saundra Brown Armstrong); *Sears v. County of Monterey*, 2013 U.S. Dist. LEXIS 120401, at *12–13 (N.D. Cal. Aug. 22, 2013) (Judge Lucy Koh); *Gaudin v. Saxon Mortg. Servs.*, 2013 U.S. Dist. LEXIS 110727, at *2–3 (N.D. Cal. Aug. 3, 2013) (Judge Jon Tigar).

7

Accordingly, the government's request for judicial notice that FirePay, PokerStars, and PartyPoker are all foreign entities is **GRANTED**.

**CONCLUSION**

For the reasons stated above, the government's motion for summary judgment is **GRANTED.**

The government shall file a brief by June 10, 2014, no longer than five pages, detailing the amount of money owned by defendant up to June 10.  Final judgment will be entered afterwards.

**IT IS SO ORDERED.**

Dated: June 4, 2014.



WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE